UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **INSIGHT GLOBAL, LLC,**<br><br>          **Plaintiff,**<br><br>vs.<br><br>**DANIEL WENZEL, LUKE NORMAN,<br>LAUREN SUTMAR, and<br>BEACON HILL STAFFING GROUP, LLC,**<br><br>          **Defendants.** | **CASE NO. 1:17-CV-8323-PGG** |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ECKERT SEAMANS CHERIN & MELLOTT, LLC

*/s/ Charlotte L. Bednar*
Geraldine A. Cheverko (gcheverko@eckertseamans.com)
Charlotte L. Bednar (cbednar@eckertseamans.com)
Anthony M. Moccia (amoccia @eckertseamans.com)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank St., Suite 700
White Plains, NY 10606
Phone: (914) 949-2909
Facsimile: (914) 949-5424

*Attorneys for Defendants Daniel Wenzel, Luke Norman,
Lauren Sutmar and Beacon Hill Staffing Group, LLC*

**Table of Contents**

Page

I. INTRODUCTION……………………………………………………………….....1

II. ARGUMENT.................................................................................................... 1

A. Trade Secrets Claims and Breach of Duty of Loyalty ................................... 1

B. Breach of Contract Claims…......................................................................... 4

C. Norman's Separation Agreement…………………………………………….6

D. The Tortious Interference Claims Fail………………………………………7

    1. Tortious Interference with Contract………………………...……………..7

    2. Tortious Interference with Business Relationships……….....……………8

E. Insight Fails to Refute the Evidence of its Agreement to Release Claims…………….9

III. CONCLUSION………………………………………………………………….10

# Table of Authorities

**Case**                                                                                                                            **Page**

*AUA Private Equity Partners, LLC v. Soto*,
2018 U.S. Dist. LEXIS, 58356 * 16-17 (S.D.N.Y. Apr. 5, 2018)…………………………………….2

*CCM Rochester, Inc. v. Federated Inv'rs, Inc.*, 234 F. Supp. 3d 501 (S.D.N.Y. 2017)……………..6

*CSM Bakery Solutions, LLC v. Debus,* 2017 WL 2903354 (N.D. Ga., January 25, 2017)………....6

*Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446 (S.D.N.Y. 2013)…………………………………2

*Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98 (2d Cir. 1996)………………………………………....1

*International Minerals & Resources v. Pappas*,
1992 U.S. Dist. LEXIS 17588 (S.D.N.Y. Nov. 17, 1992)………………………………………….7

*Italverde Trading, Inc. v. Four Bills of Lading*, 485 F.Supp. 2d 187 (E.D.N.Y. 2007)……………..8

*Ling ex rel. Neale*, 2017 U.S. Dist. LEXIS 112401 (S.D.N.Y. July 19, 2017)……………………10

*Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659 (S.D.N.Y. Mar. 30, 2016)…………3

*Nostrum Pharms., LLC v. Dixit*, 2016 U.S. Dist. LEXIS 133844 (S.D.N.Y. Sept. 23, 2016)………7

**Statutes**

O.C.G.A. s. 13-8-53……………………………………………………………………………….5

## I. INTRODUCTION

Defendants Beacon Hill Staffing Group, LLC ("Beacon"), Daniel Wenzel, Luke Norman and Lauren Sutmar (collectively "Defendants"), hereby submit their Reply in Support of Defendants' Motion for Summary Judgment (the "Motion"). Insight's Memorandum of Law in Opposition to Defendants' Motion (the "Opposition") argues at length that Defendants are not entitled to summary judgment on any of the ten counts of the Second Amended Complaint ("SAC"). However, Insight cannot avoid an over-arching failure of each of its claims, which is the failure to demonstrate actual injury to Insight caused by any of the alleged conduct of the Defendants.[1] The Opposition also fails to refute with relevant evidence the fact that there is an "absence of evidence to support an essential element of" Insight's claims in this case. *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir. 1996).[2]

## II. ARGUMENT

### A. Trade Secrets Claims and Breach of Duty of Loyalty

Insight expressly withdraws, and thus concedes, its trade secret and breach of duty of loyalty claims (Counts I, II and VI), as against Norman, and judgment should enter on these

---

[1] Insight argues that Defendants' pre-motion letter to the Court did not address dismissal of all ten counts of Insight's SAC – this is inaccurate, as the letter either specifically named each Count and argued for judgment in Defendants' favor or, with respect to the tortious interference and breach of contract claims, provided a clear summary of its arguments. *See* ECF Doc. 75, at 5 ("Insight has failed to show any actual damages from the alleged breaches of the employment and separation agreements, or demonstrate a legitimate business interest justifying the broad restrictions it seeks to enforce against the individual defendants.").

[2] Defendants respectfully refer the Court to Defendants' Local Rule 56.1 Statement of Material Undisputed Facts in Support of this Motion ("SUF"), as well as Defendants' Response to Insight's Statement of undisputed material facts ("Def's Response to IG SUF"), which have been submitted contemporaneously with this Reply, and incorporate the facts stated therein into this submission.[2] References to Insight's responses to Defendants' SUF are indicated as ("IG Response to SUF").

claims. Opposition, at fn. 2.[3]

Insight also does not dispute the fact that Count II, alleging violation of the New York common law claim for trade secret misappropriation, requires *use* of the information allegedly taken. *See Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 470 (S.D.N.Y. 2013).  Thus, Insight cannot support Count II by relying on evidence purportedly showing that either Wenzel or Sutmar "retained," "accessed" or "acquired" information learned during their employment with Insight.  With respect to the federal trade secrets statute (Count I), Insight argues that this claim requires evidence of "acquisition" only – however, a plaintiff must prove *improper* acquisition of trade secrets and mere "access" to information or retention of information that was not wrongfully obtained in the first place will not suffice. *See AUA Private Equity Partners, LLC v. Soto*, 2018 U.S. Dist. LEXIS, 58356 * 16-17 (S.D.N.Y. Apr. 5, 2018).  Purported evidence that Sutmar "accessed" information on Insight's system on the last day of her employment with Insight, or the fact that Wenzel had client contacts on his phone (which he testified were automatically deleted upon leaving Insight) do not support this claim. *See* Opposition, at 9; *see* Def's Response to IG SUF ¶ 148.  Wenzel did *not* "admit" that he had retained information he obtained at Insight, and Insight does not claim that Wenzel took an actual customer list or any actual document. *See* Opposition, at 7; *see* Def's Response to IG SUF ¶ 148.  Insight essentially speculates that some of the phone numbers in Wenzel's phone *must* have been retained from his employment at Insight, but such unspecified contact information is not a confidential "customer list developed … through substantial effort" and it is not a trade secret.  To the extent Insight alleges that Wenzel retained client information "in contemplation of his immediate employment

---

[3] Insight further concedes Count III to the extent that it asserts Norman violated the Non-Solicitation or Non-Disclosure Restrictions of his Employment Agreement. Opposition, at fn. 13.

{K0776370.1}                                  2

at Beacon Hill", this assertion is wholly conclusory, and it is not supported by Insight's citations or by *any* evidence in the record. Def's Response to IG SUF ¶¶ 148-149.

Insight argues that Sutmar used the information in the Call Sheet and Designee Packet at Beacon, but Insight's corporate representative explicitly testified that Insight had no facts, evidence or information to suggest that Ms. Sutmar has used any of the information from the Designee Packet or the Call Sheet in her employment with Beacon Hill. *See* SUF ¶ 73.[4]  Notably, Insight argues that Sutmar has contacted personnel at certain of the same customers that are listed in the Call Sheet, but Insight does not argue – and points to no evidence – that Sutmar was contacting the same *personnel* listed in the Call Sheet or using information from the Call Sheet to do so. *See* Opposition, at 10.

As addressed at length in Defendants Memorandum in Support of this Motion, neither the information Wenzel is alleged to have "retained" nor the information in the Call Sheet is the product of hours of "cultivation" by Insight, or information that could not be obtained by any other staffing company through publicly-available sources. *See* SUF ¶¶ 68-79.[5]  To the extent the

---

[4] Insight argues that Defendants "offer no explanation as to why Sutmar sent these email to herself within days of her resignation," but the burden is on Insight to prove that it possessed a trade secret, *and* that Sutmar used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *See Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016).  Sutmar explained at her deposition that she may have emailed information to her personal email while at Insight because "we had recruiters constantly on the road with us for the program …. These were things we were required to go over with them on. E-mail was spotty. Our printers never worked. Things would happen and so there were times where if I had a road day or was out with a recruiter, I would forward something to a personal e-mail and delete it. This apparently fell through the cracks, never got deleted." Sutmar Dep. 139:16-140:6 (Ex. 6. to Bednar Decl. in support of this motion).

[5] Insight refers to IG Response to SUF ¶¶ 135 to 138 and argues that "[n]ineteen of the twenty pages of the Designee Packet contain original content detailing Insight Global's sales processes and training for Account Managers."  SUF ¶ 136.  The deposition testimony cited, however, does not state that the Packet contained "original content," but rather states that it contains "different role play scenarios and different situational topics."  IG 30(b)(6) Dep. Vol. I, at 143:16-23.  In its

trade secret misappropriation claims fail, the breach of duty of loyalty claim (Count VI) also fails.  Insight's expert report merely relies on estimates of the time to compile the allegedly secret information, not the value of the information, and there is no evidence of damages. *See* SUF ¶ 112.[6]

### B. Breach of Contract Claims

Insight has failed to demonstrate that it incurred damages as a result of any of the conduct by the Defendants, including the alleged breaches of contract by the Individual Defendants, and its arguments in the Opposition purporting to demonstrate otherwise fail.  First, Insight's claim that, had Wenzel remained an Insight employee, he would have generated $3 million in profit for Insight and, had Sutmar remained an Insight employee, she would have generated $450,000 are wholly speculative and irrelevant to the claims of the SAC.  It is undisputed that Wenzel and Sutmar were at-will employees who could have left or been terminated from Insight at any time. *See* SUF ¶ 114; *See* Response to SUF ¶ 114.  Further, Insight's corporate representative admitted at deposition that such alleged lost profits would have been incurred even if, for example, Wenzel had gone to work at Starbucks instead of Beacon. Def.'s Response to IG SUF ¶ 159.  There is no connection between this alleged loss and the breach of contract alleged.

Second, to the extent that Insight argues that it has incurred additional costs in order to replace each Individual with a similar employee, and that it is not "not hypothetical," Insight's own expert testified that his damages estimate was a "hypothetical model," and that Insight has not hired any new employees to replace the Individual Defendants or changed its hiring practices

---

30(b)(6) testimony, Insight could not explain how its training was any different from that of another company.  *See* SUF ¶ 71.

[6] Further, information about customer preferences, hiring needs and the hiring personnel can change quickly, and needs to be updated, and thus becomes obsolete. *See* Def's Response to IG SUF, ¶ 36.

as a result of any conduct by the Defendants. *See* SUF ¶¶ 109-111.  Further, Insight's corporate representative admitted that the cost to replace an employee is the same whether they breach or comply with their Employment Agreements, and therefore there is no causal connection whatsoever between the alleged misconduct of any of the Defendants and the claimed "replacement cost" damages. *See* SUF ¶ 115; *see* IG Response to SUF ¶ 115 ("Undisputed that the replacement cost is the same irrespective of whether the Individual Defendants violated their post-employment restrictive covenants").  There is no genuine dispute that actual costs were *not* incurred by Insight as a result of conduct by the Defendants.  It is clear from the record that these speculative costs (as well as the alleged, estimated costs for Insight to create a list of customer names and contact information, or a training manual, which Insight claims were misappropriated) do not arise from any actual injury Insight has suffered or cost it has incurred because of Defendants' alleged conduct.

With respect to the enforceability of Norman's Employment Agreement, Insight acknowledges that the governing law of the agreement (Georgia statute) does not allow post-employment non-competitive restrictions unless the employee fits into certain categories, but attempts to fit Norman into the category of an employee who "[c]ustomarily and regularly engage[s] in making sales or obtaining orders or contracts for products or services to be performed by others." O.C.G.A. s. 13-8-53 (a)(2).  Insight's argument that Defendants rely solely upon a conclusory statement in Norman's affidavit is erroneous – Norman's affidavit alleged numerous facts beyond the paragraph cited by Insight that demonstrated he was not making sales or obtaining the contracts from customers for job placement. *See* Norman Aff., ¶¶ 3, 9-13, 18. Insight does not dispute that, "[a]t Insight, it is the Account Manager who primarily communicates with the client, obtains job orders and presents candidates to the client" and that,

Norman "did not obtain or solicit job requisitions or business from customers or sell or attempt to sell Insight's services to any customer." IG Response to SUF ¶¶ 31-32. Insight's argument that candidates recruited by Norman would, if chosen by the customer, eventually sign a Contract Employment Agreement with Insight to provide services for the customer, does not transform Norman's job into a sales role. Courts have rejected similar attempts to expand the statutory language to encompass employees who merely participate in some aspect of sales. *See CSM Bakery Solutions, LLC v. Debus,* 2017 WL 2903354, *5-7 (N.D. Ga., January 25, 2017).

### C. Norman's Separation Agreement

Norman's Separation Agreement is not enforceable for the same reason the Employment Agreement is not enforceable – the governing law prohibits a post-employment non-competition restriction for employees like Norman who do not fit within the statute.

With respect to Insight's fraudulent inducement claim, Insight's arguments do not demonstrate that Norman induced Insight to enter into the Separation Agreement – an agreement that Norman's supervisor told him he needed to sign and which Insight attempts to procure from every departing employee. *See* Def.'s Response to IG SUF, ¶ 111. Insight's Opposition ignores the fact that "[t]o sustain a fraudulent inducement claim without direct evidence, the plaintiff must provide 'evidence of facts that support a strong inference that the defendants possessed the requisite fraudulent intent.'" *CCM Rochester, Inc. v. Federated Inv'rs, Inc.*, 234 F. Supp. 3d 501, 507 (S.D.N.Y. 2017). There is no evidence that Norman possessed the requisite fraudulent intent at the time he signed the Separation Agreement, and instead the testimony from both Norman *and* the Insight supervisor who asked him to sign the Separation Agreement demonstrates that it was not made clear to Norman why he was being asked to sign the document, or that the two weeks' pay was not payment Norman had already earned. *See* SUF ¶¶ 43-44, 46-47. Insight

cannot establish that Norman intentionally and fraudulently induced Insight to enter into the Separation Agreement.

### D.      The Tortious Interference Claims Fail

#### 1.      Tortious Interference with Contract

The Opposition argues that Beacon's letters offering employment to the individual Defendants, and the history of Insight suing Beacon for alleged tortious interference, suffice to establish that Beacon knew the terms of the individual Defendants' Employment Agreements and intended to interfere with them. Opposition, at 17-18.  However, the offer letters do not make any reference to the Employment Agreements, and the actual Beacon employees involved in hiring the individuals and the individual Defendants themselves testified that they did not discuss the terms of these agreements. *See* Filusch Decl. Exs. 15, 36, 54; *see* SUF ¶¶ 62-64. Further, the fact that Insight has sued Beacon with respect to, allegedly, "substantially similar employment agreements" concerning other employees in other, unrelated cases, does not support a claim that Beacon knew the terms of the actual employment agreements at issue in *this* case, and the cases cited do not support an argument to the contrary. *See International Minerals & Resources v. Pappas*, 1992 U.S. Dist. LEXIS 17588 (S.D.N.Y. Nov. 17, 1992); *Nostrum Pharms., LLC v. Dixit*, 2016 U.S. Dist. LEXIS 133844, * 54-55 (S.D.N.Y. Sept. 23, 2016).

To the extent that Wenzel had "actual knowledge" of Norman's Employment Agreement because, as a Sales Manager, he would have known which agreements employees were signing, this contention ignores the fact that Wenzel was a Sales Manager in Philadelphia, and not when he worked with Norman in New York. *See* SUF ¶¶ 57-59.  Wenzel's agreement was also different from Norman's, included a different "non-competition" area, and, as indicated by the

different dates at the bottom of the documents, indicating a revision or "Rev." date, Wenzel and Norman were not, in fact, signing the same employment agreement.[7]

Insight's argument that Beacon offered the individual Defendants' "senior" titles based on their projected "production level" *as an incentive to breach their Employment Agreements* is pure speculation, is not based on any of the evidence in the record, and is not supported by the exhibits cited in purported support of this assertion. *See* Opposition, at 19, and IG Response to SUF, ¶ 145. Further, as explained in detail above, Insight's purported evidence of damages is hypothetical and speculative.

2. Tortious Interference with Business Relationships

Insight's argument relies upon an assumption that Wenzel must have interfered with Insight's relationship one hiring manager at NBC Universal, simply because Insight "has had no success in contacting ▮▮▮ or obtaining any business from his department" while Wenzel has been able to do so. Opposition, at 20.[8] This assertion is the sum and substance of the tortious interference with business relationships claim, and it does not establish tortious interference. Insight does not – and cannot – argue that there is any evidence in the record showing interference with any of the other NY Customers named in the SAC. The cases cited by Insight in its Opposition do not support its attempt to rely on assumptions to defeat summary judgment. *See Italverde Trading, Inc. v. Four Bills of Lading*, 485 F.Supp. 2d 187, 205 (E.D.N.Y. 2007).

Insight also relies upon speculation, unsupported by anything in the record, to argue that Beacon is systematically poaching Insight's employees and that Beacon is acting "for the sole

---

[7] *See* Ex. 19 and Ex. 20 to the February 1, 2019 Declaration of Charlotte Bednar in support of Def.'s Response to IG SUF.
[8] Notably, no evidence from ▮▮▮ himself has ever been introduced by Insight.

{K0776370.1}   8

purpose of inflicting harm on Insight." Opposition, at 21. Notably, Insight cites to nothing in the evidentiary record to support this claim, nor can it, for the reasons stated in Defendants' Motion.

**D.    Insight Fails to Refute the Evidence of its Agreement to Release Claims**

Insight's Opposition argues that the release language clearly concerns only claims accrued up to the date of the Settlement Agreement's execution. However, Insight's argument wholly ignores the fact that the parties to the Settlement Agreement had agreed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 18, at Par. 13. Beacon agreed to this limited ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It would not make sense for the parties to agree to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[9] The clear intent of the parties was to end the repetitive litigation over employment agreements and affiliation with either Insight or Beacon.

The cases cited by Insight are distinguishable and do not support its arguments. For instance, the *Ling* case involved a plaintiff suing his contractors for a kitchen renovation gone awry, the release at issue in that case stated that it applied to "all rights and claims . . . of

---

[9] Further, Insight argues that the "Beacon Hill Release Parties" is defined to include only to Beacon Hill employees employed at the time of the Settlement Agreement's execution – but the Settlement Agreement does not include that limitation anywhere in its definition the "Beacon Hill Release Parties." *See* Exhibit 18 to Bednar Decl. in Support of this Motion.

{K0776370.1}                                9

whatever kind or nature whatsoever arising from, in connection with, or as a consequence of [plaintiff's] contractual or other relationship with [the general contractors]", and the Court found that it was not clear that the parties in that case intended to release claims that might arise from Ling's relationship with these contractors in the future. *Ling ex rel. Neale*, 2017 U.S. Dist. LEXIS 112401, *11-12 (S.D.N.Y. July 19, 2017).  Insight relies upon certain cases for its argument that "from the beginning of time" is language that "looks *backwards*, not forwards," but these cases involved language that clearly limited the release to claims from the beginning of time *and to the date of settlement agreement's date or date of execution. See* Opposition at n. 29, and cases cited therein.  The Settlement Agreement in this case has a release which specifically does not include such an end date on the claims released.  Further, in the context of the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it is clear that the parties intended to release future claims concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### III.   CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment.

                        ECKERT SEAMANS CHERIN & MELLOTT, LLC

                        */s/ Charlotte L. Bednar*
                        Charlotte L. Bednar (*admitted pro hac vice*)
                        Anthony M. Moccia (*admitted pro hac vice*)
                        ECKERT SEAMANS CHERIN & MELLOTT, LLC
                        Two International Place, 16th Floor
                        Boston, MA 02110
                        (617) 342-6800
                        cbednar@eckertseamans.com
                        amoccia@eckertseamans.com

                        Geraldine A. Cheverko (GAC 1747)
                        ECKERT SEAMANS CHERIN & MELLOTT, LLC
                        10 Bank St., Suite 700
                        White Plains, NY 10606
                        (914) 949-2909
                        Fax: (914) 949-5424
                        gcheverko@eckertseamans.com


                        ***Attorneys for Defendants Beacon Hill Staffing Group, LLC, Daniel Wenzel, Luke Norman and Lauren Sutmar***

Dated:  February 15, 2019

**CERTIFICATE OF SERVICE**

    I hereby certify that an unredacted copy of the foregoing document was submitted for filing with the Clerk of the Court, and that a copy of the forgoing document was served upon all counsel of record via electronic mail on this 15th day of February 2019, as follows:

Jessica Taub Rosenberg
Edward E. Filusch
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506-1789
Fax: (212) 506-1800
Email: jrosenberg@kasowitz.com
       efilusch@kasowitz.com


Ariel Denbo Zion
Insight Global, LLC
4170 Ashford Dunwoody Road, Suite 250
Atlanta, GA 30319
(470)-346-2775
Email:      ariel.zion@insightglobal.com


                              */s/ Charlotte L. Bednar*