**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**INSIGHT GLOBAL, LLC,**

**Plaintiff,**

**vs.**

**DANIEL WENZEL, LUKE NORMAN, LAUREN SUTMAR, and BEACON HILL STAFFING GROUP, LLC,**

**Defendants.**

**CASE NO. 1:17-CV-8323-PGG**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF LOST PROFITS

ECKERT SEAMANS CHERIN & MELLOTT, LLC

*/s/ Charlotte L. Bednar*
Geraldine A. Cheverko (gcheverko@eckertseamans.com)
Charlotte L. Bednar (cbednar@eckertseamans.com)
Anthony M. Moccia (amoccia @eckertseamans.com)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank St., Suite 700
White Plains, NY 10606
Phone: (914) 949-2909
Facsimile: (914) 949-5424

***Attorneys for Defendants Daniel Wenzel, Luke Norman, Lauren Sutmar and Beacon Hill Staffing Group, LLC***

Defendants Daniel Wenzel, Luke Norman, Lauren Sutmar (together, the "Individual Defendants"), and Beacon Hill Staffing Group, LLC ("Beacon") (together, the "Defendants"), respectfully submit this Memorandum of Law in support of their Motion *in Limine* to Exclude Evidence of Lost Profits.

## I. PRELIMINARY STATEMENT

Insight has designated exhibits Nos. 106 to 145 for trial, purportedly as evidence "Related to Insight Global's Damages/IT Staffing." Plaintiff's expert, Ian Ratner, relied upon 24 of these "damages exhibits" in his expert report. *See* Ratner Report, at Appendix 2. Some of these exhibits are spreadsheets created by Jason Petrovich. Petrovich testified that he created the spreadsheets specifically for this litigation and at the request of Insight's counsel. *See* Petrovich Dep. at 12:15-17:17. Insight seeks to use these exhibits as evidence of "lost profit" damages.

Additionally, through the testimony of Ratner, Insight seeks to introduce evidence of the purported "Replacement Cost" for Mr. Wenzel and Ms. Sutmar. Insight's purported damages are based on this estimated "Replacement Cost" (IG Dep. Vol. II, at 26:9-28:11; Ratner Dep., at 44:13-16), which includes Insight's estimated cost to replace Mr. Wenzel and Ms. Sutmar by hiring multiple new entry-level employees, training them, and – over a period of years and taking into account its attrition rate – promoting them to reach the same level of "tenure" as Mr. Wenzel and Ms. Sutmar at the time they left Insight. *See* Ratner Report, at 20-21. This "Replacement Cost" theory of damages is based on a "hypothetical model," does not reflect actual incurred expenses, and is unsupported by evidence that Insight changed its hiring targets or practices to account for the Individual Defendants' departures from Insight. Ratner Dep., 23:14-24:3,141:23-142:3.

## II. LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotations omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005) (internal citations and quotations omitted).

## III. ARGUMENT

All of Insight's purported evidence regarding damages should be excluded. The exhibits designated by Insight should be excluded because they are irrelevant, lack foundation, and constitute inadmissible hearsay. Since Ratner relied upon these exhibits, his opinions on damages are therefore unreliable. Furthermore, Ratner's use of a hypothetical "Replacement Cost" calculation is irrelevant and unreliable.

A. Insight's Designated Exhibits Related to Damages Should be Excluded

Plaintiff's designated exhibits Nos. 106 to 145 should be excluded as the exhibits are irrelevant under Fed. R. Evid. 402, lack foundation, and constitute inadmissible hearsay under Fed. R. Evid. 802.

*1. The Exhibits are Irrelevant as they Do Not Demonstrate Actual Damages.*

The exhibits that Insight will seek to introduce at trial as evidence of its damages are the various spreadsheets and reports designated as exhibits Nos. 106 to 145. Under Fed. R. Evid. 401,

evidence is considered relevant if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Irrelevant evidence is not admissible under Fed. R. Evid. 402. Insight claims these exhibits evidence damages, but fails to connect them to the alleged wrongdoing in the Second Amended Complaint. These spreadsheets are just compilations of internal data from Insight, or calculations based off that data. Petrovich Dep. at 12:15-17:17. Some of the spreadsheets were created to indicate patterns of data for specific roles at Insight. *Id.* at 23:9-16. None of these spreadsheets, however, are connected in any way to the alleged breaches in the Second Amended Complaint and therefore cannot be evidence of actual damages. In fact, the evidence produced during discovery demonstrates that Insight has not incurred any actual damages.

Insight's only specific claim of damage to its business is that it has not had the opportunity to submit candidates for job requisitions at NBC Universal's Analytics Technology Department. Insight admitted that it does not know why it has not obtained recent business from this department. *See* IG Dep. Vol. II, at 21:23-22:2; Cuppy Dep., at 124:21-125:17. There is no evidence that Defendants have caused Insight to lose business from any client, let alone from this department. *See* IG Dep. Vol. II, at 21:11-23:6; IG Dep. Vol. I, at 162:13-15; 177:7-13. One of Insight's Sales Managers in its New York office, Skylar Cuppy, testified at deposition that she is not aware of any clients or candidates that Insight has lost as a result of any conduct by the Defendants, any job orders or job requisitions that Insight did not get as a result of any conduct by any of the Defendants, any job placements Insight would have filled but for any conduct of the Defendants, or any money Insight lost because of anything the Defendants did. *See* Cuppy Dep., at 194:13 – 196:6. She further testified that between 2017 and 2018 the revenue of Insight's New York office had grown by approximately [REDACTED] and the office was meeting its quarterly revenue

growth targets. Cuppy Dep., at 187:11-189:10. Thus, these spreadsheets, which are self-serving exhibits generated solely for the purpose of this litigation, should not be allowed to controvert the actual evidence that Insight was not harmed, as they have no tendency to make any facts concerning damages more or less probable.

*2. The Exhibits Lack Foundation.*

At his deposition, Jason Petrovich testified that he created the spreadsheets specifically for this litigation and at the request of Insight's counsel. *See* Petrovich Dep. at 12:15-17:17. "Summary charts should not be admitted unless a proper foundation is established connecting the numbers on the chart with the underlying evidence. Courts have long required that district courts ascertain that summary charts fairly represent and summarize the evidence upon which they are based." *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986) (internal citation and quotation omitted). Other than Petrovich testifying that he created the spreadsheets, Insight has produced no evidence regarding the information upon which the spreadsheets were based. Insight has produced no evidence as to how the data upon which the spreadsheets are based was created, where it was created, when it was created, who created it, whether that data was created in the ordinary course of Insight's business, or any other evidence that may show that the information contained therein is accurate in any way. Consequently, Insight has failed to lay an adequate foundation sufficient to have the exhibits entered into evidence.

*3. The Exhibits Constitute Inadmissible Hearsay.*

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Dupree,* 706 F.3d at 136 (citing Fed. R. Evid.

802). The exhibits on damages are out-of-court statements being offered for the truth of their contents, i.e., that Insight incurred the damages alleged therein. Therefore, the damages exhibits constitute hearsay and are inadmissible. The exhibits are also not subject to any of the hearsay exceptions within Fed. R. Evid. 803 and 804.[1] Accordingly, the exhibits on damages should not be admitted into evidence.

B. Ian Ratner's Calculations and Conclusions are Irrelevant and Unreliable.

In ruling on the admissibility of expert testimony, courts focus on three issues: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issues will assist the trier of fact. *Nimely v. City of N.Y.*, 414 F.3d 381, 396-97 (2d Cir. 2015). "The trial judge is to act as a 'gatekeeper' with respect to expert testimony." *In re Reserve Fund Sec. & Derivative Litig.*, No. 09 CIV. 4346 PGG, 2012 WL 12356742, at *1 (S.D.N.Y. Sept. 10, 2012) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993)). The court must make an initial determination whether the proposed witness qualifies as an expert. Fed. R. Evid. 702. "If this threshold requirement is met, then a court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant and reliable." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352–53 (S.D.N.Y. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

"The proffered expert must also demonstrate that there is 'a reliable linkage between the facts ... and the conclusions' in his or her report." *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp.

---

[1] As stated above, Petrovich created the spreadsheets for purposes of this litigation, so they would not be a business record maintained in the ordinary course of business. There is also the risk of double hearsay, as Insight has provided no evidence that the data underlying the spreadsheets was created in the ordinary course of business.

3d 818, 832 (S.D.N.Y. 2018) (quoting *R.F.M.A.S, Inc. v. So*, 748 F. Supp. 2d 244, 252-53 (S.D.N.Y. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993); *Kumho Tire*, 526 U.S. at 158)). "The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence." *Baker*, 254 F. Supp. 2d at 253 (citing *Cayuga Indian Nation v. Pataki*, 83 F. Supp. 2d 318, 322 (N.D.N.Y. 2000)). "[E]xpert testimony should be excluded altogether if it is 'speculative' or 'conjectural' or if it is based on assumptions 'so unrealistic and contradictory as to suggest bad faith.'" *Baker*, 254 F. Supp. 2d at 353 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)).

Beacon does not contest that Ratner qualifies as an expert. Nonetheless, despite his qualifications, his opinions regarding lost profits and his calculations of "Replacement Costs," are speculative, based on assumptions, and are therefore irrelevant and unreliable. First, Ratner stated that he relied upon the "damages exhibits" within his expert report. *See* Ratner Report at Appendix 2. The spreadsheets within these exhibits were created by Insight at the request of counsel, specifically for use in this litigation. Petrovich Dep. 15:17-22. Insight has not provided any evidence or testimony regarding the data, information, or documents upon which the spreadsheets were created. There is thus no evidence that the information on which they are based is accurate and reliable, and correspondingly, no evidence that the spreadsheets themselves are accurate and reliable. Thus, Mr. Ratner should be precluded from testifying as to any opinion based on these exhibits, as his opinion would be inherently unreliable. *See Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc.*, No. 07 CIV.07483 RJH, 2010 WL 4892646, at *7 (S.D.N.Y. Dec. 2, 2010), *aff'd*, 501 F. App'x 85 (2d Cir. 2012) (excluding plaintiff's expert's opinion where "[e]ach bit of evidence [the expert] cited in reaching that [damages] figure was, however, speculative, contradictory, or unreliable.").

Second, Mr. Ratner stated at his deposition that his "Replacement Cost" model was a "hypothetical model" and did not reflect actual incurred expenses. This falls short of the requirement that there must be "a reliable linkage between the facts ... and the conclusions" in an expert report. *Olin Corp.*, 332 F. Supp. 3d at 832. In fact, his entire calculation ignores the testimony regarding Insight's policy on hiring and the fact the Individual Defendants were not specifically replaced. Further weakening his calculation is the parade of "imbedded assumptions" in his model: that employees would be replaced (Ratner Dep. 43:23-44:1); that existing account managers could not absorb the vacant accounts (*id.* at 46:23-47:16); that Insight hired more employees than it otherwise would have hired to replace these employees (*id.* at 74:10-76:1); that some employees are disciplined and reviewed (*id.* at 77:16-80:10); and that these employees are above-average performers. *Id.* at 120:4-121:5.

In contrast to Mr. Ratner's completely speculative opinion, the actual evidence shows that Insight had no agreement with Mr. Wenzel or Ms. Sutmar that they would work for Insight for any additional amount of time – it is undisputed that their Employment Agreements specified that they were an "at-will" employees, who could have left Insight or been terminated at any time. *See* IG Dep. Vol. I, 175:2-176:6. It is also undisputed that Insight's estimated cost to replace an employee who leaves Insight is the same whether the employee complies or does not comply with the restrictive covenants in the Employment Agreements. *See* Ratner Dep., at 142:20-143:1. Thus, Insight's "Replacement Costs" are wholly speculative and unrelated to the realities of Insight's business and the alleged breaches of contract. Therefore, Mr. Ratner's opinions should be excluded. *See Baker*, 254 F. Supp. 2d at 353.

## IV. CONCLUSION

WHEREFORE, Defendants respectfully request that this Court exclude all evidence of lost profits.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

*/s/ Charlotte L. Bednar*

Geraldine A. Cheverko (gcheverko@eckertseamans.com)
Charlotte L. Bednar (cbednar@eckertseamans.com)
Anthony M. Moccia (amoccia @eckertseamans.com)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank St., Suite 700
White Plains, NY 10606
Phone: (914) 949-2909
Facsimile: (914) 949-5424

***Attorneys for Defendants Daniel Wenzel, Luke Norman, Lauren Sutmar and Beacon Hill Staffing Group, LLC***

Dated: March 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record via Federal Express, on this 15th day of March, 2019, upon the following counsel:

Edward Filusch
Jessica T. Rosenberg
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
***VIA EMAIL:*** efilusch@kasowitz.com
JRosenberg@kasowitz.com

Ariel D. Zion
Insight Global, LLC
4170 Ashford Dunwoody Road, NE
Suite 250
Atlanta, Georgia 30319
***VIA EMAIL:*** Ariel.Zion@insightglobal.com

*/s/ Charlotte L. Bednar*