# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INSIGHT GLOBAL, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>DANIEL WENZEL, LUKE NORMAN, LAUREN SUTMAR, and BEACON HILL STAFFING GROUP, LLC<br><br>Defendants. | Civil Action No.: 1:17-cv-8323 (PGG) |

## PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

Edward E. Filusch
Jessica T. Rosenberg
Jonathan L. Shapiro
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Phone: (212) 506-1700
Facsimile: (212) 506-1800
efilusch@kasowitz.com
jrosenberg@kasowitz.com
jshapiro@kasowitz.com

Ariel D. Zion
INSIGHT GLOBAL, LLC
4170 Ashford Dunwoody Road, NE
Suite 250
Atlanta, Georgia 30319
Phone: (404) 257-7900
Facsimile: (404) 257-1070
Ariel.Zion@insightglobal.com
*Pro Hac Vice*

*Attorneys for Plaintiff Insight Global, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.     STANDARD APPLICABLE TO DEFENDANTS' MOTIONS *IN LIMINE* ................. 3

     A.     Standard Applicable to Motions *In Limine* Generally ............................ 3

     B.     Standards Applicable to Motions *In Limine* on a Bench Trial............................ 4

          1.     Relevance .................................................................... 5

          2.     Prejudice ..................................................................... 6

          3.     Expert Evidence and *Daubert* Motions........................................ 7

II.     DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OF LOST PROFITS SHOULD BE DENIED ................................................ 8

     A.     Insight Global's Designated Exhibits Related to Damages
Should Not Be Excluded........................................................................ 9

          1.     Exhibits PX 106 to PX 145 Are Not Irrelevant .......................... 9

          2.     Exhibits PX 106 to PX 145 Do Not Lack Foundation............................ 10

          3.     Exhibits PX 106 to PX 145 Do Not Constitute
Inadmissible Hearsay .................................................... 12

     B.     Insight Global's Expert's Calculations and Conclusions
Are Neither Irrelevant Nor Unreliable.................................................... 14

III.     DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OF CLIENT LISTS SHOULD BE DENIED ................................................ 17

     A.     The Client Lists Do Not Lack Foundation and Are Neither Irrelevant
Nor Prejudicial .................................................................................. 18

     B.     The Client Lists Are Admissible as Business Records ....................... 20

IV.     DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OF PLEADINGS IN UNRELATED ACTIONS SHOULD BE DENIED .................... 21

     A.     The Other Lawsuits Are Relevant as They Show Beacon Hill's
Knowledge of the Employment Agreements....................................... 22

B.   Because This Is a Bench Trial There Is No Risk of Prejudice
and Confusion ........................................................................................... 23

C.   The Other Lawsuits Do Not Constitute Inadmissible Hearsay
Because Insight Global Is Not Offering Them for Their Truth ........................... 24

CONCLUSION ........................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Corp. v. Cmty. Network Servs., Inc.*,
  1999 U.S. Dist. LEXIS 19789 (S.D.N.Y. Dec. 29, 1999) .......................................14

*Au New Haven, LLC v. YKK Corp.*,
  2019 U.S. Dist. LEXIS 45044 (S.D.N.Y. Mar. 19, 2019) ......................................16

*Barna v. United States*,
  183 F.R.D. 235 (N.D. Ill. 1998).............................................................................7

*Baxter Diagnostics, Inc. v. Novatek Med. Inc.*,
  1998 U.S. Dist. LEXIS 15093 (S.D.N.Y. Sept. 25, 1998)....................................3

*Bic Corp. v. Far E. Source Corp.*,
  23 F. App'x 36 (2d Cir. 2001) ..............................................................................15

*Boykin v. W. Express, Inc.*,
  2016 U.S. Dist. LEXIS 14771 (S.D.N.Y. Feb. 5, 2016).......................................20

*Chelsea Industries, Inc. v. Gaffney*,
  449 N.E.2d 320 (Mass. 1983) ...............................................................................17

*Chitayat v. Vanderbilt Assocs.*,
  2007 U.S. Dist. LEXIS 72207 (E.D.N.Y. Sept. 27, 2007)....................................5

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
  2004 U.S. Dist. LEXIS 17791 (S.D.N.Y. Sept. 3, 2004).....................................5, 9

*Crawford v. Tribeca Lending Corp.*,
  815 F.3d 121 (2d Cir. 2016)..............................................................................18, 19

*EEOC v. Farmer Bros. Co.*,
  31 F.3d 891 (9th Cir. 1994) ...................................................................................5

*Ellerton v. Ellerton*,
  745 F. Supp. 2d 458 (D. Vt. 2010)..........................................................................4

*Floyd v. City of New York*,
  2013 U.S. Dist. LEXIS 68790 (S.D.N.Y May 13, 2013).......................................7

*Frederick Chusid & Co. v. Marshall Leeman & Co.*,
  326 F. Supp. 1043 (S.D.N.Y. 1971)......................................................................17

*Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007)........................................................................16

*Harris v. Rivera*,
   454 U.S. 339 (1981)........................................................................................4

*Health Alliance Network, Inc. v. Continental Casualty Co.*,
   245 F.R.D. 121 (S.D.N.Y. 2007) ............................................................13, 14, 20

*Int'l Minerals & Res., Inc. v. Pappas*,
   1992 U.S. Dist. LEXIS 17588 (S.D.N.Y. Nov. 17, 1992)...............................22, 23

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998)..............................................................................24

*Joseph S. v. Hogan*,
   2011 U.S. Dist. LEXIS 76762 (E.D.N.Y. July 15, 2011) ......................................8

*Kamara v. United States*,
   2005 U.S. Dist. LEXIS 20651 (S.D.N.Y. Sept. 19, 2005)......................................6

*Krist v. Kolombos Rest. Inc.*,
   688 F.3d 89 (2d Cir. 2012)...............................................................................4

*Ling ex rel. Neale*,
   2017 U.S. Dist. LEXIS 112401 (S.D.N.Y. July 19, 2017) ...................................23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)..................................................................8

*Luce v. United States*,
   469 U.S. 38 (1984).......................................................................................3, 4

*In re M/V MSC Flaminia*,
   2017 U.S. Dist. LEXIS 119146 (S.D.N.Y. July 28, 2017) .....................................6

*MacWade v. Kelly*,
   2005 U.S. Dist. LEXIS 31281 (S.D.N.Y. Dec. 2, 2005) ......................................12

*Marini v. Adamo*,
   995 F. Supp. 2d 155 (E.D.N.Y Feb. 6, 2014) ....................................................16

*Mass Engineered Design, Inc. v. Planar Sys.*,
   2018 U.S. Dist. LEXIS 112661 (D. Oregon July 6, 2018) .....................................5

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995).............................................................................15

*In re McGohan*,
  75 B.R. 10 (Bankr. N.D.N.Y. 1986) ...................................................................12

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  643 F. Supp. 2d 482 (S.D.N.Y. 2009)................................................................4

*In re Metlife Demutualization Litig.*,
  262 F.R.D. 217 (E.D.N.Y. 2009)......................................................................24

*Miller v. City of Cincinnati*,
  709 F. Supp. 2d 605 (S.D. Ohio 2008) ..............................................................6

*Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Grp.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) ................................................................3, 4

*New York v. Solvent Chem. Co.*,
  2006 U.S. Dist. LEXIS 65595 (W.D.N.Y. Sept. 14, 2006) .............................7, 16

*New York v. UPS*,
  2016 U.S. Dist. LEXIS 123115 (S.D.N.Y. Sept. 10, 2016)................................7

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)...........................................................................15

*Novak v. Tucows, Inc.*,
  2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007)..................................20

*In re Oak Rock Fin., LLC*,
  560 B.R. 635 (Br. E.D.N.Y. 2016) ..................................................................4

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996)............................................................................3

*Park W. Radiology v. CareCore Nat'l LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009)..........................................................4, 24

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
  38 F.3d 627 (2d Cir. 1994)............................................................................13

*Reese v. McGraw-Hill Cos.*,
  293 F.R.D. 617 (S.D.N.Y. 2013) ....................................................................24

*Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*,
  321 F. Supp. 2d 469 (N.D.N.Y 2004)..............................................................4, 7

*Saks Int'l, Inc. v. M/V "Export Champion"*,
  817 F.2d 1011 (2d Cir. 1987).........................................................................13

*Serby v. First Alert, Inc.*,
    2015 U.S. Dist. LEXIS 95611 (E.D.N.Y. July 22, 2015) ..................................................1, 15

*Seven Corners Shopping Ctr. Falls Church, VA. v. Chesapeake Enters. USA LLC*,
    2010 U.S. Dist. LEXIS 133298 (W.D.N.Y. Dec. 16, 2010) .............................................14, 20

*Shavuo v. Shinseki*,
    2013 U.S. Dist. LEXIS 50042 (S.D.N.Y. Apr. 5, 2013) .........................................................10

*Tyler v. Bethlehem Steel Corp.*,
    958 F. 2d 1176 (2d Cir. 1992) ..............................................................................................16

*Ulico Cas. Co. v. Clover Capital Mgmt., Inc.*,
    217 F. Supp. 2d 311 (N.D.N.Y. 2002) ...................................................................................16

*United States v. Am. Express Co.*,
    2014 U.S. Dist. LEXIS 87360 (E.D.N.Y. June 24, 2014) ....................................................5, 6

*United States v. Citron*,
    783 F.2d 307 (2d Cir. 1986).............................................................................................11, 12

*United States v. Koskerides*,
    877 F.2d 1129 (2d Cir. 1989)...........................................................................................11, 19

*United States v. Lavin*,
    480 F.2d 657 (2d Cir. 1973)...................................................................................................13

*United States v. Locascio*,
    6 F.3d 924 (2d Cir. 1993)......................................................................................................14

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001).....................................................................................................14

*United States v. Williams*,
    205 F.3d 23 (2d Cir. 2000).....................................................................................................13

*Velez v. Novartis Pharms. Corp.*,
    2010 U.S. Dist. LEXIS 95010 (S.D.N.Y. Feb. 25, 2010) ......................................................10

*Victoria's Secret Stores Brand Mgmt. v. Sexy Hair Concepts, LLC*,
    2009 U.S. Dist. LEXIS 30458 (S.D.N.Y. Apr. 8, 2009).........................................................7

*Weiss v. La Suisse, Societe d'Assurances Sur la Vie*,
    293 F. Supp. 2d 397 (S.D.N.Y. 2003)....................................................................................10

*Woods v. United States*,
    200 F. App'x 848 (11th Cir. 2006) .........................................................................................6

*Yosemite Springs Park Util. Co. v. Chevron, U.S.A. Inc.*
(*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*),
2011 U.S. Dist. LEXIS 140619 (S.D.N.Y. Dec. 6, 2011) ........................................................6

**Other Authorities**

Fed. R. Evid. 401 ................................................................................................................5, 9

Fed. R. Evid. 403 ....................................................................................................................6

Fed. R. Evid. 702 ..................................................................................................................14

Fed. R. Evid. 703 ..................................................................................................................14

Fed. R. Evid. 803(6) .........................................................................................12, 13, 14, 20

Fed. R. Evid. 803(18) ...........................................................................................................14

Fed. R. Evid. 901 ..................................................................................................................18

Fed. R. Evid. 1006 ..........................................................................................................11, 19

Insight Global respectfully submits this Omnibus Opposition to Defendants' Motions *in Limine* in accordance with Rule X.D.2 of the Court's "Individual Rules of Practice of Judge Paul G. Gardephe Civil Cases."[1]

## PRELIMINARY STATEMENT

In advance of the April 15, 2019 bench trial in this action, Defendants submitted three motions *in limine* seeking to have the Court determine whether to exclude evidence from the Court's own consideration.  It is beyond cavil that there is no danger that the Court will be prejudiced by any evidence that may otherwise confuse a jury.  Defendants' motions plainly are designed, not for the stated purpose of preventing fact-finder confusion, but to, once again, increase Plaintiff's litigation costs.

In seeking to have the Court (as legal gatekeeper) prevent the Court (as factfinder) from considering certain evidence, Defendants' motions *in limine*, remarkably, although perhaps unsurprisingly, fail to even acknowledge the lenient evidentiary standards for bench trials.  Instead, all three motions regurgitate black-letter law for excluding evidence in the context of jury trials.  Defendants' motions should be disregarded for this reason alone.

Even were the Court to consider Defendants' motions, each of Defendants' substantive arguments in support of excluding the at-issue evidence fails.

*First*, Defendants have submitted a motion *in limine* to "exclude evidence of lost profits" (which is referred to herein as "MIL LP __") [ECF Nos. 133-134].  In this motion, Defendants (i) argue for the exclusion of Exhibits PX 106 to PX 145 (but focus their argument specifically on certain Excel spreadsheets that were created to assist Insight Global's expert, Ian Ratner, in

---

[1] Insight Global submits this opposition to Defendants' three motions *in limine* in omnibus fashion for the Court's convenience in light of, among other things, the duplicative nature of Defendants' legal arguments presented in their memoranda of law.

preparing his report on damages) on the grounds that the exhibits are irrelevant, lack foundation, and constitute inadmissible hearsay; and (ii) argue that the testimony on damages by Ian Ratner (whom they concede qualifies as an expert) concerning the Individual Defendants' "Replacement Costs" should be excluded as irrelevant and unreliable under *Daubert* because of the assumptions contained therein.  Neither PX 106 to PX 145, nor Ratner's testimony, should be excluded.  The exhibits (specifically, the spreadsheets) should not be excluded because (i) they are plainly relevant to Insight Global's damages; (ii) foundation testimony has been properly presented as to each spreadsheet; and (iii) the spreadsheets are excepted from hearsay rules as business records. Moreover, Defendants' criticisms of the assumptions underpinning Ratner's testimony go to the weight, not the admissibility, of Ratner's testimony; and, Ratner's testimony and calculations as to the Individual Defendants' "Replacement Costs" will assist the Court in calculating Insight Global's damages.  Accordingly, this motion should be rejected in its entirety.

*Second*, Defendants have submitted a motion *in limine* to "exclude evidence of client lists" (which is referred to herein as "MIL CL __") [ECF Nos. 129-130] which should likewise be denied.  In this motion, Defendants argue for the exclusion of three exhibits showing the client lists of Wenzel (PX 90), Sutmar (PX 46), and Norman (PX 23) because (i) they lack foundation; (ii) they are irrelevant; (iii) they are unduly prejudicial; and (iv) the lists constitute inadmissible hearsay.  Defendants' arguments fail, and this motion should be denied:  the client lists have been authenticated in the trial Declaration of Katie Archer as the clients from whom the Individual Defendants earned commissions and, as such, the lists are relevant to Insight Global's breach of contract (client solicitation) claims; in addition, they are excepted from hearsay rules as business records.  Of course, since this is a bench trial, there is no risk of prejudice from the Court's consideration of these lists, which, in any event, are in no way prejudicial.

*Finally*, Defendants have submitted a motion *in limine* to "exclude evidence of pleadings in unrelated actions" (which is referred to herein as "MIL PUA __") [ECF No. 131-132]. In this motion, Defendants argue for the exclusion of the pleadings in other actions between Insight Global and Beacon Hill (PX 95 to PX 103) because (i) they are irrelevant; (ii) they are too prejudicial; and (iii) they are inadmissible hearsay. Each of these arguments fail and this motion also must be denied. First, the other actions are relevant to show Beacon Hill's knowledge of the Individual Defendants' employment agreements and Beacon Hill's pattern of poaching Insight Global employees. Second, they are not prejudicial in the context of a bench trial where the Court will be the trier of fact. Finally, they are not inadmissible as hearsay because Insight Global does not offer the exhibits for their truth; instead, Insight Global offers them to show Beacon Hill's knowledge and state of mind.

For the foregoing reasons and those set forth herein, Insight Global respectfully requests that the Court deny Defendants' three motions *in limine*.

## ARGUMENT

## I. STANDARD APPLICABLE TO DEFENDANTS' MOTIONS *IN LIMINE*.

### A. Standard Applicable to Motions *In Limine* Generally.

The standards governing motions *in limine* are well established: The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). Evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med. Inc.*, 1998 U.S. Dist. LEXIS 15093, at *10-11 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because

the motion was too sweeping in scope to be considered prior to trial).  Moreover, courts considering

a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate

factual context.  *See Nat'l. Union First Ins. Co.*, 937 F. Supp at 286-87.[2]

### B.    Standards Applicable to Motions *In Limine* on a Bench Trial.

This action will be heard as a bench trial, which, of course, means that the trial court is the

finder of fact and makes credibility determinations.  *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89,

95 (2d Cir. 2012).  Before a bench trial the need for an advance ruling on a motion *in limine* is

generally considered to be "superfluous and unnecessary."  *In re Oak Rock Fin., LLC*, 560 B.R.

635, 638 (Br. E.D.N.Y. 2016) (citing *Serby v. First Alert, Inc.*, 2015 U.S. Dist. LEXIS 95611, at

*3 (E.D.N.Y. July 22, 2015) (the risk of juror confusion or potential prejudice is not a factor in a

bench trial, negating the usefulness of motions *in limine*)); *see also Ellerton v. Ellerton*, 745 F.

Supp. 2d 458, 460 (D. Vt. 2010) (explaining that a threshold evidentiary ruling on a motion *in

limine* "is generally superfluous" on a bench trial) (citing *United States v. Heller*, 551 F.3d 1108,

1112 (9th Cir. 2009) ("[A motion *in limine* on a bench trial] would be, in effect . . . asking the

judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence.")).

Given the superfluous nature of a motion *in limine* on a bench trial, "judges routinely hear

inadmissible evidence that they are presumed to ignore when making decisions," *Harris v. Rivera*,

454 U.S. 339, 346 (1981), including evidence that otherwise may be deemed irrelevant and

prejudicial.  *See Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480

---

[2] Further, a court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41. Moreover, a trial judge may change a ruling on a motion *in limine* even in the absence of unexpected developments.  "Indeed even if nothing unexpected happens at trial, the district judge is free – in the exercise of sound judicial discretion – to alter a previous *in limine* ruling." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 492 (S.D.N.Y. 2009) (quotations omitted).

(N.D.N.Y 2004) ("It should not escape us that this is a bench trial.  A trial judge is quite capable to discern the relevant evidence, weigh the probative value or its prejudicial effect, and readily reject an improper inference or intrusion upon its role.").

Accordingly, "[w]hile standards for admissible evidence are not 'out the window entirely' in a bench trial, 'all doubts at a bench trial should be resolved in favor of admissibility.'" *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 2004 U.S. Dist. LEXIS 17791, at *14-15 (S.D.N.Y. Sept. 3, 2004) (quotation omitted).  In fact, "the more prudent course in a bench trial [is] to admit into evidence doubtfully admissible records. . . . In non-jury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence." *Id.*  (quotations omitted).

### 1.    Relevance

In all trials – whether a bench trial or a jury trial – the standard for relevance under Rule 401 is "not high."  *United States v. Am. Express Co.*, 2014 U.S. Dist. LEXIS 87360, at *35-36 (E.D.N.Y. June 24, 2014) (quotation omitted); *see also* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

In bench trials specifically, courts apply the relevance standard with even less "rigor." *Commerce Funding Corp.*, 2004 U.S. Dist. LEXIS 17791, at *15.  This is because "the court is presumed to be able to exclude improper inferences from its own decisional analysis." *Chitayat v. Vanderbilt Assocs.*, 2007 U.S. Dist. LEXIS 72207, at *5 (E.D.N.Y. Sept. 27, 2007) (quotation omitted).  Indeed, "the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less [in a bench trial] than in a jury trial." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994); *see also Mass Engineered Design, Inc. v. Planar Sys.*, 2018 U.S. Dist. LEXIS 112661, at *14-15 (D. Oregon July 6, 2018) (relevance concerns are limited

in a bench trial).  Accordingly, in a bench trial, the court should deny a motion *in limine* seeking to exclude evidence as irrelevant, and instead evaluate the disputed evidence in the context of the full evidentiary record.  *See Am. Express Co.*, 2014 U.S. Dist. LEXIS 87360, at *36.

### 2. Prejudice

In a bench trial "there is no chance of unduly prejudicing or confusing a jury," *Kamara v. United States*, 2005 U.S. Dist. LEXIS 20651, at *18-19 (S.D.N.Y. Sept. 19, 2005); therefore, Rule 403[3] objections carry little to no weight.  *See Am. Express Co.*, 2014 U.S. Dist. LEXIS 87360, at *47-48 ("[B]ecause this case will proceed as a bench trial the risk of confusion or prejudice . . . is minimal.  The court is fully capable determining the reliability and probative value of [a document] after hearing all relevant testimony.") (citing *Bic Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 38-39 (2d Cir. 2001)); *see also Yosemite Springs Park Util. Co. v. Chevron, U.S.A. Inc.* (*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*), 2011 U.S. Dist. LEXIS 140619, at *17 (S.D.N.Y. Dec. 6, 2011) (bench trial eliminates any danger of undue prejudice for purposes of Rule 403); *In re M/V MSC Flaminia*, 2017 U.S. Dist. LEXIS 119146, at *196 (S.D.N.Y. July 28, 2017) (finding, in ruling on Rule 403 objection, that "[t]here is no danger of [expert's] testimony . . . misleading the factfinder" in the context of a bench trial).  Accordingly, courts characterize Rule 403 objections, in the context of a bench trial, as "unnecessary" and "useless." *Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 620 (S.D. Ohio 2008) (collecting cases); *see also Woods v. United States*, 200 F. App'x 848, 853 (11th Cir. 2006) (noting that "the part of Rule 403

---

[3]  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

that authorizes exclusion of evidence because of its unfair prejudicial impact has no logical application to bench trials") (quotation omitted).[4]

### 3. Expert Evidence and *Daubert* Motions

Finally, in a bench trial "motions *in limine* to strike party experts are less important . . . [because the court] will decide at trial whether the opinions should be given credence and what weight to attach to them." *Barna v. United States*, 183 F.R.D. 235, 239 (N.D. Ill. 1998); *see also Rondout Valley Cent. Sch. Dist.*, 321 F. Supp. 2d 469 (admitting expert testimony and report on a bench trial); *New York v. UPS*, 2016 U.S. Dist. LEXIS 123115, at *2 (S.D.N.Y. Sept. 10, 2016) ("[C]oncerns raised by possible infirmities in testimony from a proposed expert are lessened in the bench trial context").

Accordingly, "[w]here a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence; if [defendants'] objections are well-taken, the testimony will be disregarded in any event." *Victoria's Secret Stores Brand Mgmt. v. Sexy Hair Concepts, LLC*, 2009 U.S. Dist. LEXIS 30458, at *18 n.3 (S.D.N.Y. Apr. 8, 2009); *New York v. Solvent Chem. Co.*, 2006 U.S. Dist. LEXIS 65595, at *3 (W.D.N.Y. Sept. 14, 2006) (noting that the protection of juries from "technical evidence of dubious merit" is not a concern in a bench trial). As one court in this Circuit aptly explained:

> In making a *Daubert* motion, defendants are essentially asking me to gate-keep expert testimony from myself. . . . ***Expert testimony should be admitted so that the Court could have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions***. . . . Indeed, without the risk of poisoning the jury with misleading expert testimony of limited probative value, . . . the Court can take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology. . . .

---

[4] Although hearsay rules still apply, courts in this Circuit also have been more lenient with respect to hearsay during bench trials. *See Floyd v. City of New York*, 2013 U.S. Dist. LEXIS 68790, at *8-9 (S.D.N.Y May 13, 2013) ("[B]ecause this case is proceeding as a bench trial, hearsay testimony need not be as strenuously guarded").

> ***It follows then that in a bench trial, the risk is with exclusion of expert testimony rather than with its admission*** – it is exclusion that has the potential for an indelible impact on the record; if the appellate court disagrees that the expert's testimony was unreliable, a review for harmless error will be thwarted.

*Joseph S. v. Hogan*, 2011 U.S. Dist. LEXIS 76762, at *7-10 (E.D.N.Y. July 15, 2011) (emphasis added); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 629 (S.D.N.Y. 2007) ("It is well-established that the *Daubert* gatekeeping standard is applied more flexibly when the judge is the factfinder.").

## II.   DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF LOST PROFITS SHOULD BE DENIED.

Defendants have submitted a motion *in limine* to exclude Exhibits PX 106 to PX 145 as "evidence of lost profits."  These exhibits consist of Excel spreadsheets, data, and certain publicly available information relied on by Insight Global's expert, Ian Ratner.  Confusingly, while Defendants' motion *in limine* broadly seeks to strike each of these forty exhibits, the substance of their motion addresses only the Excel spreadsheets authenticated by Insight Global employee Jason Petrovich.  (*See* MIL LP p. 4-5 (arguing solely with respect to such spreadsheets).)  Further, Defendants do not seek to strike Insight Global's expert report (PX 104), or the schedules thereto (PX 105), and Defendants do not make any specific arguments with respect to the remainder of the documents that they seek to exclude (such as the publicly available documents cited in Ratner's expert report).[5]  In any event, Defendants' blunderbuss motion is without merit, and its attempt to exclude 40 exhibits, *en masse*, should be denied in its entirety.

---

[5] To the extent Defendants claim that their failure to move to exclude Exhibits PX 104 and PX 105 (the Ian Ratner expert report and schedules) was an oversight, such argument should be rejected. Indeed, the motion *in limine* does not address or challenge Ratner's misappropriation of trade secrets testimony or calculations, which are also included within the report.  (*See* Section II.B, *infra*.)

A.      **Insight Global's Designated Exhibits Related to Damages
        Should Not Be Excluded.**

Defendants seek to exclude Exhibits PX 106 to PX 145 because (i) they are irrelevant;
(ii) they lack foundation; and (iii) they constitute inadmissible hearsay.  Defendants are wrong,
and their arguments are based upon a misrepresentation of the scope of the exhibits they seek to
exclude, as well as a misapprehension of the governing evidence law.  Accordingly, Defendants'
arguments should be rejected.

1.      **Exhibits PX 106 to PX 145 Are Not Irrelevant.**

As an initial matter, Defendants' argument that the spreadsheets are not relevant (MIL LP
p. 3-5) is wrong.[6]  These spreadsheets were created by Insight Global's Vice President –
Compensation, Profitability & Process Improvement (Jason Petrovich) or by Insight Global's
Revenue Department, overseen by the Vice President of Operations (Katie Archer) (*see* Section
II.A.2, *infra*), to aid Ian Ratner in the preparation of his expert report as to Insight Global's
damages; as such, the spreadsheets are plainly relevant because they have a tendency to prove the
damages that Insight Global has suffered.  *See* Fed. R. Evid. 401.

In any event, even assuming *arguendo* that the spreadsheets (and other exhibits related to
Insight Global's damages) are not relevant – which they clearly are – the Court should decline to
exclude, *en masse*, the 40 exhibits referred to in Defendants' motion.  Indeed, Defendants do not
specifically address the relevance (or purported lack thereof) of any of the 40 documents they seek
to exclude, relying instead on boilerplate arguments as to their relevance. Accordingly, a
document-by-document refutation of Defendants' assertion that the documents are irrelevant is

---

[6] Also, Defendants' argument ignores (as set forth above, p. 5-6) that on a bench trial relevance
objections serve little purpose.  *See Commerce Funding Corp.*, 2004 U.S. Dist. LEXIS 17791, at
*14-15.

beyond the scope of this motion.  *See Velez v. Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 95010, at *17 (S.D.N.Y. Feb. 25, 2010) ("*In limine* motions are not an appropriate vehicle to obtain rulings on particular pieces of evidence that may be admissible for limited purposes . . . . That is why we are having a final pre-trial conference.").

In any event, the following examples indicate the overbreadth of Defendants' attempt to exclude evidence in their blunderbuss motion.  Although they make not one specific argument with respect to the exhibits, Defendants seek to exclude PX 113-117 and PX 140 (which are publicly available Staffing Industry Analyst Reports, discussing staffing trends, industry forecasts, and Insight Global's standing in the industry), as well as PX 110-12, 123-26, 141-42, and 144-45 (which are Insight Global presentations, press releases, and financial reports).  These documents are all relevant to Insight Global's damages and are cited by Ratner as materials he relied on in preparing his expert report.  (*See, e.g.*, PX 104, at p. 9-11.)  Yet, *Defendants do not seek to exclude Ratner's report* on this Motion (PX 104 and PX 105).  Moreover, Defendants likewise seek to introduce as exhibits the publicly available documents cited in the report of their expert, Jon Klerowski (*see* Defs.' Exs. 74-78), and they articulate no reason why public materials relied on by Ratner should be excluded while such materials relied on by Klerowski should not be considered.[7]

### 2. Exhibits PX 106 to PX 145 Do Not Lack Foundation.

Defendants argue that because Jason Petrovich, an Insight Global employee, created exhibits PX 106 - PX 145, they lack foundation and should not be admitted into evidence.  As an

---

[7] In addition, all of these exhibits are relevant for purposes *other* than Insight Global's damages, as they relate to, *inter alia*, Insight Global's financial achievements and growth, the IT staffing industry and competitive staffing trends, and the industry's sensitivity to staff turnover.  Because the exhibits Defendants seek to exclude are by no means "clearly inadmissible **on all possible grounds**," Defendants' relevancy argument should be rejected (and motion *in limine* dismissed). *See Weiss v. La Suisse, Societe d'Assurances Sur la Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003); *see also Shavuo v. Shinseki*, 2013 U.S. Dist. LEXIS 50042, at *6-7 (S.D.N.Y. Apr. 5, 2013).

initial matter, as set forth above (*see* Section II.A.1, *infra*), Defendants' characterization of these exhibits is plain wrong:   Many of these exhibits are not spreadsheets, but rather reports, presentations, and press releases, either publicly available or from Insight Global's business files and *that were not even created by Petrovich*.   Nevertheless, the Court should decline to exclude any of the spreadsheets (*i.e.*, PX 106 - PX 109, PX 118 - PX 122, and PX 127- PX 139), which were appropriately authenticated through the trial Declarations of Jason Petrovich [ECF No. 141] and Katie Archer [ECF No. 138], setting forth how the data in the spreadsheets was generated, compiled, and maintained.   To the extent the Court has any lingering concerns about the foundation for these documents following the review of their Declarations, Insight Global witnesses will be available for examination at trial.   In any event, each of these documents was created to aid Ian Ratner's preparation of his expert report and are summary charts appropriately created for presentation (and admission) at trial.

Indeed, Rule 1006 states that the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.   *See* Fed. R. Evid. 1006.   Summary charts may be presented with foundation testimony connecting it with the underlying evidence summarized and based upon otherwise competent evidence.   *See United States v. Koskerides*, 877 F.2d 1129, 1134 (2d Cir. 1989); *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986).   A Court's determination to allow summary charts will not be overturned on appeal, absent an abuse of discretion.   *See Koskerides*, 877 F.2d at 1134.

While Defendants rely exclusively on *United States v. Citron*, 783 F.2d 307 (2d Cir. 1985), to support their argument, it actually does the opposite.   Rather, in *Citron*, the government attempted to admit summary charts containing a figure for cash on hand that was obviously the

product of calculation. *Id*. at 316.  Yet, the government provided no explanation, either in the form of worksheets, testimony, or other methods of elucidation, showing how it derived the figure. *Id*. The Second Circuit in *Citron* criticized the government's failure to lay a sufficient foundation to connect the numbers on the charts to the underlying records, but expressly noted that such foundation could have been laid through testimony. *Id*. at 316-17.  Had the proper foundation been laid, as it has been here, the evidence would have, and should have, been admitted.

Accordingly, and in light of the permissive standards governing bench trials, exhibits PX 106 to PX 145 should not be excluded *en masse*.  *See In re McGohan*, 75 B.R. 10, 13 (Bankr. N.D.N.Y. 1986) (summary properly admitted where a proper foundation was laid); *see also MacWade v. Kelly*, 2005 U.S. Dist. LEXIS 31281, at *5 n.2 (S.D.N.Y. Dec. 2, 2005) (accepting into the record the data developed by plaintiffs for purposes of the bench trial, while reserving judgment on its ultimate admissibility).

### 3.    Exhibits PX 106 to PX 145 Do Not Constitute Inadmissible Hearsay.

Defendants argue that because the damages spreadsheets (*i.e.*, PX 106 - PX 109, PX 118 - PX 122, and PX 127 - PX 139) were created during litigation, they "constitute hearsay and are inadmissible." (MIL LP p. 6.)  However, the fact that the spreadsheets contain data retrieved from a computer storage system during litigation does not convert the spreadsheets to inadmissible hearsay.  Indeed, Rule 803(6) of the Federal Rules of Evidence excepts from the operation of the hearsay rule any:

> memorandum, report, record or data compilation, in any form, of acts [or] events ... *made at or near the time by*, or from information transmitted by, someone with knowledge, *if kept in the course of a regularly conducted business activity*, and if it was the regular practice of the business activity to make the memorandum, report, record or data compilation, ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6) (emphasis added).  In all cases, "[t]he principal precondition to admission of

documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir. 1987).   Rule 803(6), moreover, favors the admission of evidence rather than its exclusion if it has any probative value.  *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000).   The determination of whether, in all the circumstances, the records are sufficiently reliable to warrant their admission in evidence is left to the sound discretion of the trial court.  *See id.*; *see also United States v. Lavin*, 480 F.2d 657, 662 (2d Cir. 1973).

Here, as noted, Petrovich and Archer have submitted trial Declarations setting forth how the documents were created and culled from Insight Global's electronic databases and kept in the regular course of Insight Global's business.  Such information can constitute the books and records of a company.  *See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (citation omitted) ("A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice.").

A similar approach to electronic records underlies the court's decision in *Health Alliance Network, Inc. v. Continental Casualty Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007), where the plaintiff introduced electronically stored data to identify the health care providers added to a managed care network.  The defendants claimed "that the compilation itself is not a business record because it was culled from the database using a query, and therefore was '[d]ata prepared or compiled for use in litigation . . . not admissible as business records.'" *Id*. (citation omitted).  The court rejected that argument, reasoning:

> This argument . . . ignores the realities of modern business litigation, where many business records are kept in databases, and parties query these databases in order to provide responses to discovery requests.  If Defendants' argument was taken to its logical conclusion, parties responding to discovery requests during litigation would

> be required to produce all data found in their database for any data from the database to be admissible at trial. . . . Where as here, there are sufficient indicia of reliability of the data produced, and the underlying database is maintained through the ordinary course of business, this court holds that *a smaller subset of data provided as evidence from the database is subject to the business records exception to the hearsay rule*.

*Id.* (emphasis added).  Accordingly, the Court should decline to exclude any of the spreadsheets (*i.e.*, PX 106 - PX 109, PX 118 - PX 122, and PX 127 - PX 139).  *See AT&T Corp. v. Cmty. Network Servs., Inc.*, 1999 U.S. Dist. LEXIS 19789, at *12-14 (S.D.N.Y. Dec. 29, 1999) (determining that compilation of data entered into and stored on computer system was admissible under Rule 803(6)); *Seven Corners Shopping Ctr. Falls Church, VA. v. Chesapeake Enters. USA LLC*, 2010 U.S. Dist. LEXIS 133298, at *8-9 (W.D.N.Y. Dec. 16, 2010) ("The fact that plaintiff printed out the summary to use in connection with this litigation does not convert the business record into inadmissible hearsay.")[8]

Accordingly, for these reasons, PX 106 to PX 145 should not be excluded as evidence.

**B.      Insight Global's Expert's Calculations and Conclusions Are Neither Irrelevant Nor Unreliable.**

Defendants, ignoring that this is a bench trial where the risk lies with the exclusion of expert testimony (*see* p. 7-8 *supra*), make a *Daubert* motion under Rule 702 to preclude the

---

[8] Even if the spreadsheets are not admissible, Rule 703 specifically permits an expert to rely upon inadmissible data in forming his opinions. *See* Fed. R. Evid. 703.  Such data need not be admissible if it is "of a type reasonably relied on by experts in the particular field" in forming opinions or inferences upon the subject.  *Id.*  Thus, expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions.  *See United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) (internal citations omitted); *see also United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) (expert testimony properly relied upon "multiple hearsay").  Further, to the extent that Defendants' hearsay argument extends to the non-spreadsheet documents relied on by Ratner (*e.g.*, the Staffing Industry Analyst Reports), such documents are excepted from the hearsay rule pursuant to Fed. R. Evid. 803(18).

testimony (and the conclusions) of Insight Global's expert, Ian Ratner, with respect to his testimony concerning the Individual Defendants' "Replacement Costs" (MIL LP p. 6-8).[9]

A court considers three criteria on a *Daubert* motion: (1) whether the witness qualifies as an expert; (2) whether the expert's opinion is based upon reliable data and methodology; and (3) whether the expert's testimony will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005). As to the first criteria, Defendants concede in their motion, as they must, "<u>that Ratner qualifies as an expert</u>." (MIL LP p. 7.) Defendants instead challenge the second and third criteria, arguing that Ratner's "calculations of 'Replacement Costs' are speculative, based on assumptions, and are therefore irrelevant and unreliable." (MIL LP p. 7-8.)[10] This Court should reject Defendants' attacks because (i) their criticisms are based on Ratner's assumptions, and (ii) Ratner's conclusions will assist the Court in determining Insight Global's damages.

*First*, Defendants' attacks on Ratner's assumptions "go to the weight, not the admissibility, of his testimony."[11] *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995); *see also BIC Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 38 (2d Cir. 2001) (a party's "contentions that

---

[9] As noted, Defendants do not challenge the admissibility of Ratner's conclusions or calculations regarding damages related to the misappropriation of Insight Global's trade secrets and do not seek to exclude the actual expert report (PX 104) or report schedules (PX 105). (*See generally* MIL LP p. 7-8; *see also* PX 104 (Ratner Report) at 24-28 (discussing misappropriation damages).)

[10] Defendants also curiously claim that they are seeking to exclude Ratner's "opinions regarding lost profits" (MIL LP p. 7) – but although Ratner noted that lost profits is a relevant methodology by which to calculate Insight Global's damages, Ratner was unable to reach any conclusions as to such lost profits because Beacon Hill did not produce sufficient information. (PX 104 (Ratner Report) at 17.)

[11] Defendants attack Ratner's assumptions in part on the basis that Ratner relies on "the damages exhibits" (*i.e.*, the spreadsheets authenticated by Petrovich and Archer) cited within his expert report. (MIL LP p. 7.) But, as discussed in Section II.A, *supra*, Defendants' challenge to these exhibits – and to the Excel spreadsheets specifically – are meritless.

the [expert's] assumptions are unfounded go to the weight, not the admissibility of the testimony.")
(quotation omitted); *Ulico Cas. Co. v. Clover Capital Mgmt., Inc.*, 217 F. Supp. 2d 311, 318
(N.D.N.Y. 2002) ("Attacks relating to faults in the experts methodology . . . are improper criteria
for advancing a motion under 702.").  Accordingly, courts routinely deny *Daubert* motions when
they merely are attacks on the expert's assumptions.  *See, e.g.*, *Tyler v. Bethlehem Steel Corp.*, 958
F. 2d 1176, 1188 (2d Cir. 1992) (refusing to strike expert testimony allegedly based upon
unfounded assumptions); *Solvent Chem. Co.*, 2006 U.S. Dist. LEXIS 65595, at *5 (denying
*Daubert* motion that attacks sufficiency of assumptions); *Marini v. Adamo*, 995 F. Supp. 2d 155,
181 (E.D.N.Y Feb. 6, 2014) (same); *Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*, 508
F. Supp. 2d 295, 317 (D. Vt. 2007) (same).[12]

*Second*, Ratner's testimony will assist the Court because the Individual Defendants'
respective Replacement Costs are an appropriate measure of Insight Global's damages given
Insight Global's business realties.  As Ratner explains in his trial Declaration [ECF No. 142],
because of Insight Global's "promote from within" business model, when Insight Global loses an
employee, it does not, as it cannot, simply hire an outside person to fill that position.  (Ratner Decl.
¶ 10.)  Instead, in order to replicate the lost employee, Insight Global has to hire multiple entry-
level employees in order to end up with one employee with similar tenure as the departed employee
at some time in the future (this is known as the "Funnel" concept).  (*Id.*)  Given this hiring practice,

---

[12] Defendants' criticism that Ratner's model is "hypothetical" (MIL LP p. 8) is not a proper basis
on which to grant their motion.  *See Au New Haven, LLC v. YKK Corp.*, 2019 U.S. Dist. LEXIS
45044, at *41-45 (S.D.N.Y. Mar. 19, 2019) (rejecting plaintiffs' motion *in limine* to exclude expert
testimony on damages that was based on a "hypothetical[]" because motion "goes to weight, not
admissibility.").  Moreover, there is no dispute that the Individual Defendants all went to work at
Beacon Hill, within its New York office, so the fact that the Individual Defendants were "at-will"
employees who could have left Insight Global at any time (MIL LP p. 8.) is irrelevant, because
they joined a competitor in contravention of their non-compete agreements.

Ratner developed a damages model to calculate the additional costs incurred by Insight Global in order to replace each Individual Defendant with a similar employee of the same tenure based on the average time it would take Insight Global to do so (*i.e.*, the "Replacement Cost" of each Individual Defendant).  (*Id.*)

Such Replacement Cost damages have been deemed to be an appropriate measure of damages in similar litigation.  *See Frederick Chusid & Co. v. Marshall Leeman & Co.*, 326 F. Supp. 1043, 1060-61 (S.D.N.Y. 1971) (finding that appropriate measure of "damages to [plaintiff] [for violations of at-will employment agreements] would appear to be the cost of training replacements for those enticed by defendants," although noting that plaintiff failed to adequately prove such cost); *see also Chelsea Industries, Inc. v. Gaffney*, 449 N.E.2d 320, 330 n.23 (Mass. 1983) ("[Plaintiff] also was entitled to recover the costs of these services as the cost of training replacements because the defendants, who were in a relation of confidence with the plaintiff, interfered with [plaintiff's] relations with its two employees . . .  Therefore, [plaintiff] is entitled to recover damages for the cost of training replacements for those enticed by defendants.") (citation omitted).[13]

Accordingly, for these reasons, Defendants limited *Daubert* motion should be denied.

## III.   DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CLIENT LISTS SHOULD BE DENIED.

Defendants' second motion *in limine* seeks to "exclude evidence of client lists," namely, exhibits PX 90, PX 46 and PX 23 – the client lists of Wenzel, Sutmar, and Norman, respectively.

---

[13] In addition, or as an alternative measure of its damages for certain of its claims, Insight Global is entitled to recoup the profit Wenzel was expected to generate over the next year of his employment following his departure from Insight Global, and the profit Sutmar was expected to generate over the next year of her employment following her departure from Insight Global.  (*See* Insight Global's Proposed Findings of Fact and Conclusions of Law [ECF No. 136] ¶¶ 196-200; *see also* [Proposed] Joint Pretrial Order [ECF No. 135] Section 5.C and 5.G).

(*See generally* MIL CL.)  Defendants argue that these exhibits should be excluded because (i) they

lack foundation; (ii) they are irrelevant; (iii) they are unduly prejudicial; and (iv) the lists constitute

inadmissible hearsay.  Defendants are wrong, and continue to misapprehend applicable law.

  A.  **The Client Lists Do Not Lack Foundation and Are Neither Irrelevant Nor Prejudicial.**

  Defendants argue that the client lists have not been authenticated for purposes of Federal

Rule of Evidence 901(a).  (MIL CL p. 3-4.)  However, Rule 901(a) requires only that "that an item

of evidence be 'authenticated' through introduction of evidence sufficient to warrant a finding that

the item is what the proponent says it is.  Rule 901(a) does not erect a particularly high hurdle and

is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of

authenticity or identification."  *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir.

2016) (quotation omitted).

  Insight Global easily satisfies this hurdle through the trial Declaration of Katie Archer

[ECF No. 138], which authenticates and identifies the three exhibits in dispute.  As Archer testifies,

while Wenzel and Sutmar were employed by Insight Global, they earned commissions from

requisitions filled by candidates placed at various Insight Global clients.  (Archer Decl. ¶¶ 27, 40.)

PX 90 and PX 46, respectively, represent a list of clients for which Wenzel and Sutmar filled

requisitions by staffing contractors, and for which they received commissions from Insight Global

on those placements.  (Archer Decl. ¶¶ 27, 40.)  The clients in the respective lists are confirmed,

respectively, by the "Daniel Wenzel" tab and "Lauren Sutmar" tab of PX 106, which tabs reflect

all revenue generated by requisitions Wenzel and Sutmar filled by placing candidates with clients

while at Insight Global and for which they earned commissions.  (Archer Decl. ¶¶ 27, 40.)

  Likewise, while Norman was employed by Insight Global, he earned commissions from

candidates placed at various Insight Global clients.  (Archer Decl. ¶ 47.)  PX 23 represents a list

of clients at which Norman staffed contractors, and for which he received commissions from Insight Global on those placements.  (Archer Decl. ¶ 47.)  These clients are confirmed by the "Luke Norman" tab of PX 106, which tab reflects all revenue generated by candidates which Norman placed with clients while at Insight Global and for which he earned commissions.  (Archer Decl. ¶ 47.)  Given such testimony from Katie Archer, it is clear that Insight Global has met the authenticity standard under Rule 901(a).[14]  *See Crawford*, 815 F.3d at 126.[15]

Moreover, Defendants' argument that the exhibits should be excluded because they are irrelevant and prejudicial (MIL CL p. 4-5) should be rejected outright given that this is a bench trial.  *See* p. 5-7, *supra*.  In any event, Defendants cannot seriously argue that the *names* of the Individual Defendants' clients are not relevant to Insight Global's breach of contract (client solicitation) claims[16], or that the Court, as the trier of fact itself, will somehow be confused when

---

[14] Further, for the same reasons discussed above (*see* p. 11, *supra*), the client lists also are properly before the Court pursuant to Rule 1006 as summary lists.  *See* Fed. R. Evid. 1006; *Koskerides*, 877 F.2d at 1134.

[15] Defendants also curiously assert that "Insight has not produced any evidence that its expert witness, Ian Ratner, will attempt to compare the client lists with an authenticated piece of evidence."  (MIL CL p. 4.)  That is a correct observation that is beside the point, as Ratner opines only as to the Individual Defendants' Replacement Costs and to the value of Insight Global's trade secrets that were misappropriated by Wenzel and Sutmar.

[16] In the Non-Solicitation of Customers Restriction of the Individual Defendants' Employment Agreements, the Individual Defendants agreed that they would be prohibited from soliciting, for one-year post-employment, any "actual or prospective customer or clients" of Insight Global with whom they had "Material Contact" during the last two years of their employment.  (Employment Agreements § 6.)  Material Contact is defined to include, among other things, any "actual or prospective customer or client" from whom the employee "received compensation, commissions, or earnings within two years prior to the date of Employee's separation from employment with Employer on account of the sale or provision of products of services to the customer of client."  (*Id.*)

evaluating the weight to assign to these exhibits.[17]

### B.    The Client Lists Are Admissible as Business Records.

Finally, Defendants argue that these exhibits are inadmissible hearsay.  (MIL CL p. 6.)

Defendants' contention is meritless for the same reason that the spreadsheets prepared by Petrovich

are admissible:  they are admissible under the business records exception of Rule 803(6).  (*See* p.

12-14, *supra* (discussing Rule 803(6).)  Indeed, as noted above in Section III.A, *supra*, Archer has

submitted a trial Declaration setting forth how the three client lists were created by reference to

the information logged on PX 106 (which spreadsheet itself was created from data stored in Insight

Global's electronic databases, kept in the regular course of Insight Global's business).  *See Health

Alliance Network, Inc.*, 245 F.R.D. at 129 ("a smaller subset of data provided as evidence from [a]

database is subject to the business records exception to the hearsay rule"); *see also Seven Corners

Shopping Ctr. Falls Church, VA.*, 2010 U.S. Dist. LEXIS 133298, at *8-9.

Accordingly, for these reasons, neither PX 90, PX 46, nor PX 23 should be excluded as

evidence.[18]

---

[17] Defendants' argument regarding the prejudicial nature of the client lists is not entirely clear. They appear to be arguing that the length of each of the client lists will cause the Court to infer that the Individual Defendants worked for numerous clients, and therefore there is a higher likelihood that they violated their Restrictive Covenants. (*See* MIL CL p. 5.) If this is indeed their argument, it is completely nonsensical.

[18] Alternatively, if the Court declines to admit the exhibits into evidence, it should, for ease of reference, nevertheless consider them as demonstratives that identify the clients from whom the Individual Defendants earned commission.  A demonstrative refers to an "object or document" that is displayed to the trier of fact to help them better "understand the substantive evidence (testimony or other objects or documents) by interpreting, summarizing, or explaining it."  *Boykin v. W. Express, Inc.*, 2016 U.S. Dist. LEXIS 14771, at *12 (S.D.N.Y. Feb. 5, 2016) (quotation omitted).  Where a document is "submitted merely as a demonstrative aid, . . . . the hearsay rule is not applicable."  *Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269, at 11-12 (E.D.N.Y. Mar. 26, 2007).

## IV.   **DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PLEADINGS IN UNRELATED ACTIONS SHOULD BE DENIED.**

Defendants final motion *in liminie* seeks to exclude the exhibits related to Insight Global's other litigation with Beacon Hill (PX 95 to PX 103), which exhibits are authenticated in the trial Declaration of Katie Archer (¶¶ 51-59).[19]   (*See generally* MIL PUA.)  Defendants argue that the exhibits should be excluded because (i) they are irrelevant; (ii) they are prejudicial; and (iii) they are inadmissible hearsay.  (*See generally id*.)  As set forth below, each of these arguments are wrong:  (i) the exhibits are relevant as they show Beacon Hill's knowledge of the Employment Agreements; (ii) there is no risk of prejudice where the Court is the trier of fact; and (iii) the exhibits are not hearsay because Insight Global does not offer them for their truth, but rather to show Beacon Hill's knowledge and statement of mind.

---

[19] Specifically, these nine exhibits include:  (i) PX 95 (the May 12, 2008, Complaint filed by Insight Global in Massachusetts Superior Court, Suffolk County in the matter of *Insight Global v. Beacon Hill Staffing Group, LLC and Andrew Dickhaut*, No. 0884-cv-02141); (ii) PX 96 (the August 12, 2009, Complaint filed by Insight Global in Massachusetts Superior Court, Suffolk County in the matter of *Insight Global v. Beacon Hill Staffing Group, LLC and Lindsay Reardon*, No. 0984-cv-03412; (iii) PX 100 (the June 10, 2015, Complaint filed by Insight Global in the Superior Court of Dekalb County, State of Georgia in the matter of *Insight Global, LLC v. Kim Gallagher*, No. 15CV6293-1 ("Gallagher Action"); (iv) PX 99 (the August 11, 2015, Petition filed by Insight Global in the Circuit Court of St. Louis, State of Missouri in the matter of *Insight Global, LLC v. Beacon Hill Staffing Group, LLC*, No. 15SL-CC02718); (v) PX 101 (the September 29, 2015 Complaint filed by Insight Global in the Superior Court of Dekalb County, State of Georgia in the matter of *Insight Global, LLC v. William Theis*, NO. 15CV10012-3 ("Theis Action"); (vi) PX 97 (the August 8, 2017, Complaint filed by Insight Global in the United States District Court for the Southern District of Texas, Houston Division in the matter of *Insight Global v. James Cody Lilley and Beacon Hill Staffing Group, LLC*, No. 4:17-cv-02440); (vii) PX 98 (the August 8, 2017, Complaint filed by Insight Global in the United States District Court for the District of Colorado in the matter of *Insight Global v. Mary McDonald and Beacon Hill Staffing Group, LLC*, No. 1:17-cv-1915); (viii) PX 103 (the January 9, 2017, Partial Answer to Complaint and Counterclaim filed by Insight Global against John Barker in the matter of *John Barker v. Insight Global, LLC*, No. 5:16-cv-07186-BLF in the United States District Court for the Northern District of California); and (ix) PX 102 (the January 20, 2017, Complaint filed by Insight Global in the United States District Court for the Norther District of California in the matter of *Insight Global, LLC v. Beacon Hill Staffing Group, LLC*, No. 3:17-cv-00309).

**A.     The Other Lawsuits Are Relevant as They Show Beacon Hill's Knowledge of the Employment Agreements.**

As an initial matter, given that this is a bench trial, this Court should not even countenance Defendants' arguments as to the relevancy of these exhibits. *See* p. 5-6, *supra*.

Setting aside that Defendants' relevancy objection serves no purpose on a bench trial, however, Defendants' argument as to the relevancy of these exhibits fails on the merits. Defendants argue that the exhibits are irrelevant because (i) the individual defendants involved in those actions are not parties to this lawsuit, and thus the employment agreements at issue in those agreements are not at issue in this Action (MIL PUA p. 4.), and (ii) even if the Court assumes that the employment agreements are the same as those in this Action, the Court should not assume that the hiring personnel at Beacon Hill has knowledge of the agreements (MIL PUA p. 5).

Defendants' argument misses the point.  Insight Global's claim against Beacon Hill for tortious interference with contract (Count VIII) turns, in part, on whether Beacon Hill had knowledge of Insight Global's employment agreements with the individual defendants.  Beacon Hill has defended against this claim by contending that it lacked knowledge of the precise terms of those agreements because it never saw them.  Insight Global, however, has asserted that "a defendant need not be aware of all the details of a contract to be liable for tortious interference." *See Int'l Minerals & Res., Inc. v. Pappas*, 1992 U.S. Dist. LEXIS 17588, at *8-9 (S.D.N.Y. Nov. 17, 1992).  To that end, Insight Global submits PX 95 to PX 103 as evidence that, even if Beacon Hill lacked knowledge of the *specific* terms of the Employment Agreement, it at least knew that Insight Global has, from 2008 to 2017, commenced at least nine actions against it in state and federal court on the basis that Beacon Hill has poached Insight Global employees, all with substantially similar employment agreements that contain restrictive covenants.

As such, the agreements are relevant insofar as they demonstrate that Beacon Hill had

knowledge of Insight Global's restrictive covenants generally, and nevertheless hired the Individual Defendants.  Even if Defendants are correct that the "hiring personnel at Beacon has obviously changed over time" (MIL PUA p. 5), these exhibits show that, at a minimum, Beacon Hill at no point implemented any policy or instruction not to hire Insight Global employees.[20]

**B.      Because This Is a Bench Trial There Is No Risk of Prejudice and Confusion.**

Defendants argue that the Court should exclude PX 95 to PX 103 as too prejudicial because they will cause the Court to conclude "that Beacon is a repeat offender in interfering with Insight's business and employees" (which, of course, it is).  (MIL PUA p. 5-6.)  This argument fails because this is a bench trial, and the Court is not in danger of being prejudiced.  *See* p. 6-7, *supra* (citing, *e.g.*, *Kamara*, 2005 U.S. Dist. LEXIS 20651, at *18-19; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 140619, at *17).  Contrary to Defendants' argument that this Court will be prejudiced by only seeing the Complaints (and one Answer) in those actions and no additional evidence or pleadings (MIL PUA p. 6), there is no question that this Court is more than capable of giving the appropriate weight to the Complaints filed in those actions.  *See id.* Additionally, if Beacon Hill was truly concerned about the prejudicial nature of these documents it could have sought to introduce the Answers and related documents as exhibits, given that it had

---

[20] Defendants argue that Insight Global has taken a "contradictory position" by offering as exhibits the Complaints from the Theis Action and the Gallagher Action, while denying that the April 11, 2016 settlement agreement in those actions is relevant to this Action.  (MIL PUA p. 5 n. 1.) Defendants are wrong.  The Complaints from the Theis Action and the Gallagher Action are relevant insofar as they show Beacon Hill's knowledge of the Individual Defendants' Employment Agreements.  The settlement agreement, and the release contained therein, however, is not relevant to this Action because the agreement did not release future claims by Insight Global against Beacon Hill based on conduct that had not yet occurred or against any and all future Beacon Hill employees.  (*See* Defs.' Ex. 73, § 20.)  Rather, like most such agreements, it released only claims that were known, or could have been known, against Beacon Hill and its then-current employees at the time of the agreement.  *See Ling ex rel. Neale*, 2017 U.S. Dist. LEXIS 112401, at *11-12 (S.D.N.Y. July 19, 2017).

the benefit of reviewing Insight Global's exhibit list prior to its filing with the Court.

     C.    **The Other Lawsuits Do Not Constitute Inadmissible Hearsay Because Insight Global Is Not Offering Them for Their Truth.**

Finally, Beacon Hill's argument that the other Complaints constitute inadmissible hearsay (MIL PUA p. 6-7) is incorrect because Insight Global is not offering them for their truth. Rather, Insight Global is offering them merely to show that Beacon Hill was made aware that, and knew that, Insight Global alleged that it had employment agreements that contained restrictive covenants. As such, the Complaints are not hearsay. *See In re Metlife Demutualization Litig.*, 262 F.R.D. 217, 236 (E.D.N.Y. 2009) ("Evidence that would otherwise satisfy the definition of hearsay, if not offered for the truth of the matters asserted, but instead to show defendants' state of mind, is not hearsay") (citing Fed. R. Evid. Rule 801(c)). For this reason, Defendants' reliance on *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 329 (S.D.N.Y. 2009), and *Reese v. McGraw-Hill Cos.*, 293 F.R.D. 617, 622 n.7 (S.D.N.Y. 2013) (MIL PUA p. 7) – where the courts determined that complaints and the allegations therein constitute inadmissible hearsay – is misplaced. Neither case concerned a motion *in limine* on a bench trial, and Insight Global is not offering the Complaints for their truth.[21] As such, the Court should deny Defendants' motion to exclude the exhibits related to the other actions.

**CONCLUSION**

For the foregoing reasons, Insight Global respectfully requests that the Court deny Defendants' motions *in limine* in their entirety.

---

[21] Moreover, and in any event, it is well-established that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks and citation omitted). As such, this Court should, at a minimum, take judicial notice of these other actions.

Dated: March 26, 2019
New York, New York

KASOWITZ BENSON TORRES LLP

By:       _/s/ Edward E. Filusch_____
Edward E. Filusch (efilusch@kasowitz.com)
Jessica T. Rosenberg (jrosenberg@kasowitz.com)
Jonathan L. Shapiro (jshapiro@kasowitz.com)
1633 Broadway
New York, New York 10019
Phone: (212) 506-1700
Facsimile: (212) 506 - 1800

INSIGHT GLOBAL, LLC
Ariel D. Zion (Ariel.Zion@insightglobal.com)
Georgia Bar No. 230543
4170 Ashford Dunwoody Road, NE
Suite 250
Atlanta, Georgia 30319
Phone: (404) 257-7900
Facsimile: (404) 257-1070
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff Insight Global, LLC*